## BURNS and RANDLE v. MINTER.

1. When a school commissioner has drawn school funds from the bank, which he fails to pay over as directed by law, any legal voters of the township may maintain an action against him for the recovery of the money, by motion under the statute.
2. When the school commissioners neglect to employ teachers, and refuse to appropriate money in their hands for the tuition of the children of the township, if the children of the township do attend other schools, within its limits, the tuition money may be recovered from them, or any one of them, by any legal voter, for the purpose of defraying such tuition.
3. Such a judgment could be rendered in the name of the plaintiff, for the aggregate sum, ascertaining the several sums due each child, or parent, to be satisfied by the payment of these several amounts, to the persons respectively entitled.
4. One commissioner, as such, cannot recover from another commissioner, money belonging to the school fund in his hands.

Writ of Error to the Circuit Court of Dallas.

Upon a suggestion to the orphans' court of Dallas, by the plaintiffs, two of the legal voters of township 17, in range 12, situated in that county, that the defendant, a commissioner of the same township, had collected funds belonging to the township which he had failed to pay over, it was ordered, on motion of the plaintiffs, that a citation issue requiring the defendant to appear before the court on the second Monday in July next thereafter, (1844,) to show cause why a judgment should not be rendered against him for the amount of money collected by him, and which he neglected and refused to pay over, together with twenty per cent. damages for its detention.

The facts, so far as material, may be thus condensed: The defendant, as a commissioner of the sixteenth section, received at one time of the Branch of the Bank of the State of Alabama at Montgomery, the sum of $203 25, and at another time the sum of $282 82. Defendant was afterwards requested by some of the inhabitants of the township to pay over the money he had thus received for the use of the schools

therein. The plaintiffs also demanded it of him to be applied to the same use. The plaintiffs are commissioners of the sixteenth section, and inhabitants and legal voters within the same.

It was shown that there were about forty children in the township, who were entitled to the benefit of the school funds; that ever since the receipt of the money by the defendant, there had been schools in the township, the teachers of which were paid by the inhabitants of the same—the defendant refusing to pay anything from the funds in his hands.

The plaintiffs themselves have children who are entitled to the benefit of the township funds. Long after this proceeding was instituted, on the day previous to the trial, a treasurer of the township was appointed; and thereupon the plaintiffs modified their motion so as to pray judgment in favor of such treasurer, or other person or corporation as might be entitled to recover.

It was proved that all the teachers but one who had been employed since the receipt of the money by the defendant, (that is, from 1840 to 1844), had received certificates of qualification, with one exception. The motion for judgment was overruled, and the proceeding dismissed. Upon appeal to the circuit court, the judgment of the orphans' court was affirmed; and the cause now comes here for revision on the judgment of affirmance.

FELLOWS and EVANS, for the plaintiffs in error, cited Connell v. Woodward, 5 How. Rep. (Miss.) 665; Clay's Dig. 522, § 13; 523, § 14, 15; 527, § 35; 528, § 41; 529, § 45, 46, 47, 48.

G. W. GAYLE, for the defendants in error, relied upon the reasoning of the judge of the orphans' court contained in his opinion sent up with the transcript, and made no additional argument.

COLLIER, C. J.—The act of 1837, "to revise and amend the laws in relation to schools and school lands," (Clay's Dig. 526, § 24) directs that the commissioners of the several six-

teenth sections which may be sold, shall pay into the State Bank or a branch thereof, all the moneys which they then had or might thereafter receive, belonging to their respective sections, &c.; and the officers of the bank shall open an account current on the books thereof, with such commissioners, for all money, &c., and the same shall bear interest, payable quarter-yearly, &c., which interest shall be paid to the commissioners on demand, and applied by them solely to the use of schools in the township which they represent."

The same statute authorizes the commissioners to appoint and discharge at pleasure, a clerk and treasurer, and requires the treasurer to enter into bond with surety, conditioned for the performance of his duties, and to account for and pay over according to law, and the regulations and orders of the commissioners, &c., all moneys which he shall receive under his appointment. It is made the duty of the treasurer to receive all moneys which may become due for rents, or may be in any other way accruing to the school fund of the township or any district therein, &c. [Clay's Dig. 522, § 13.]

It is further provided, that the commissioners shall apportion the funds in hand among the several school districts in the township, in proportion to the number of pupils in each school for the preceding year. The trustees of each school district, or where the township supports but one school, the commissioners shall have power to employ teachers or a teacher, on such terms as they may deem expedient; but no teacher is to be employed until he shall have been examined by the commissioners, and obtained their certificate of his qualifications and good character. [Clay's Dig. 523, § 14, 15.]

If there is no school in a township, or not scholars enough to constitute a school therein, or where it shall be more convenient to send to school in an adjoining township, it shall be the duty of the commissioners to apply the interest arising from the sale, &c., to the education of the scholars of such township in equal proportion, "at any other school not situated in such township, which shall be paid to the parent or guardian, upon the certificate of the teacher of such child or children." [Clay's Dig. 527, § 35, 41.]

The act of 1843, "to compel commissioners of sixteenth

sections to pay over funds received by them, and for other purposes," (Clay's Dig. 529, § 45, 46, 47, 48,) enacts that where commissioners of sixteenth sections have failed to establish schools in their respective townships as now required by law, it shall be their duty to pay over all such interest as may have accrued, until such schools shall be established, to the children of the township who have attended any other school in the township, in the same manner as is now provided by law for children going to established schools under their direction. *Further*, when a commissioner or commissioners shall have drawn from bank any funds belonging to his or their township, and shall fail to pay over the same with legal interest from the time it was received, "on motion of any legal voter of the township where the funds have or may hereafter be withheld in the regular orphans' court of his county, it shall be the duty of the judge to issue a citation forthwith, requiring said commissioner or commissioners to appear *instanter*, and show cause why judgment should not be entered against him or them and their securities, for said default. Upon the return of said citation, the judge of said court shall proceed to hear and determine the same, and give judgment as the equity of the case may appear." *Again:* "Should the judge be of opinion the commissioner or commissioners have failed or refused to comply with the law, he shall proceed to give judgment against the same, and his or their securities, with twenty per cent. as damages."

The motion in the present case is not a proceeding at the instance of two of the commissioners against the third. If such were its character, it could not be supported; for the act does not authorize a majority of the board to proceed summarily or otherwise against the minority to recover the school funds of the township, which the latter may have received. The motion is made by the plaintiffs, not as commissioners, but as "legal voters of the township," upon the allegation that the defendant, as a commissioner, has drawn from bank funds belonging to the township, which he has failed to pay over as directed by law. In this view, if the plaintiffs are legal voters, which the evidence abundantly shows, we can see no objection to their right to make the

motion; and the question is, whether the facts entitle them to judgment.

Whether the acts of 1837 and 1840, so far as they direct the payment of interest arising from the sale of sixteenth sections, or money arising from the rent of them, to be paid to the parents or guardians of children who are sent to school out of their townships, where no school is taught within the same, may not operate with the statute of 1843, is a question which need not now be considered. But however this may be, we think it is not necessary in any other case to furnish a certificate of the teacher, to entitle the scholar to his proportion of the school fund.

The 45th section of the act of 1843, we have seen, makes it the duty of the commissioners, where they have failed to establish schools in the township, to pay over the interest which accrued on the school fund, " to the children of their township, who have actually attended any other school in said township, in the same manner, and under the same rules as are now provided by law, for children going to established schools under their direction." To entitle the children of the township who have attended a school within the same independent of the control of the commissioners, the law does not require that the teacher should have obtained from the commissioners a certificate of qualification, or that the teacher should furnish a certificate of attendance on his school. The statute makes no such requisition, and we know of no warrant for its interpolation. The proof shows, that the children of the township did attend schools within its limits, other than those established by the commissioners —in fact, that the defendant and his associates employed no teachers, and he refused to appropriate any thing for the tuition of these children, though requested to do so. This is quite sufficient to fix his default; and he cannot excuse himself by showing the funds had not been apportioned among the districts, or that the commissioners had failed to employ teachers, for this would be to make one omission of duty a justification for another, which cannot be tolerated.

It was supposed by the orphans' court, that as the plaintiffs were joint commissioners with the defendant, they were not entitled to recover, and that as the treasurer was appoint-

ed subsequently to the institution of this proceeding, no judgment could be rendered in his favor. This view proceeded from a misapprehension of the facts. The motion was not made by the plaintiffs as commissioners, but as *legal voters*, as we have already said ; and it is satisfactorily shown by the proof, that they come within this category.

There can be no objection to the competency of the legislature to authorize a *legal voter* to move against a defaulting commissioner, and recover a judgment in his own name, and the only question upon this branch of the case is, what have the legislature done? The 47th section directs the judge, upon the return of the citation, to hear and determine the motion, and give judgment as the equity of the case may demand ; and the next section authorizes a judgment to be rendered to the extent of the default, with twenty per cent. damages. To the latter section there is a proviso as follows, viz : " Either party shall have the right to appeal to the circuit court, in accordance with the law now regulating appeals."

Whether a judgment in favor of the voter, submitting the motion without any notice of the person to whose use the funds should have been appropriated, would be regular, we will not now stop to consider. But we can discover no objection to rendering a judgment in his name for an aggregate sum, ascertaining the several sums due each child or parent, and ordering the judgment to be satisfied by the payment of these several amounts to the parties respectively entitled. Such a judgment would be consonant to equity, and so far retain its unity as to authorize its revision upon an appeal to the circuit court, or a writ of error from that court, to which the plaintiff and defendant in the motion were the only parties, while at the same time it would secure to the parties entitled, their dues, without the necessity of looking to the plaintiff for payment.

The error in the ruling of the circuit court is sufficiently shown by what has been said—its judgment is consequently reversed and the cause remanded, that it may be thence sent to the orphans' court for its further action.